The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good morning. The first case today is case number 4-24-0542, People v. Mikkelson or Mikkelson. Counsel, before we begin, could we have appearances for the appellant? Sarah Vig, your honor. Thank you. And for the appellee? First name Allison Page, last name Brooks, on behalf of the people. All right. Thank you. Ms. Vig, you may proceed with your argument. Thank you, your honor. Before I proceed, I'd like to reserve time at the end for a response, rebuttal. You may. Thank you, your honor. May it please the court, counsel. Judges, we are here on two issues for my client, Mr. Isaiah Mikkelson. As I begin my argument, I would like to remind your honors, it's clear from the brief, but I'd like to take first the issue of the consecutive sentence that was imposed on him. That issue revolves around really one basic argument, I think, and that is, in order to do that, the trial court had to have found that my client was somehow dangerous, that he posed some sort of danger to the community. The statute is very clear. The statute or the case law is also very clear that consecutive sentences are supposed to be imposed sparingly. Your honors, there is no evidence in this record that my client was dangerous. In fact, the evidence in this record is the opposite of that. There's nothing about my client that was inherently dangerous or that was dangerous to the point that a consecutive sentence needed to be imposed to protect the public, judge. Judges, if you look at the record, about the only thing other than the actual facts that my client pled to, the only thing other than the facts my client pled to that the trial court looks at was one time on pretrial release when there was some confusion with my client about where he was supposed to be allowed and when. Your honors, I point out again that that is not a misstep by my client. Even the state in that instance was not clear about what the court's order meant. The state did not file a petition to revoke his bond. The state did not file a petition for sanctions. The state filed a motion for clarification. In addition to that, even as that issue is being clarified, the court allowed my client three times, three times to travel from the state of Illinois. That is not dangerous. A question about that. You mentioned that in your briefs. What I'm wondering is this. We have been told by the legislature that the Pretrial Fairness Act, everyone is presumed to be subject to release. Part of the reason for that is all people charged with a crime are presumed innocent until such time as they're convicted. Given that, why should a trial court's view of a danger posed by a defendant before he's been convicted be something that can be deemed inconsistent with the court's views of the dangers of the defendant after he's convicted? One, I think, Your Honor, we could note that this case really came in before that Pretrial Fairness Act had become effective. We know that because my client actually posted a bond in this matter. My client was out on conditions of monetary bond at this point. Nonetheless, the same thing applies. He's still presumed innocent. Why is the trial court's assessment of the defendant, while he's still presumed innocent, somehow, as you're arguing, a measure of inconsistency with the trial court's assessment of the defendant once he's been convicted? I think, Judge, especially with respect to the Pretrial Fairness Act, if that's what we're talking about, you know, the courts make those assessments all the time. That's what they're supposed to decide, right? What condition or combinations of conditions, right, can keep the community safe while this person is out on pretrial release? That is part of the statute, and I think that that is not inconsistent with what we're talking about here. If the court had thought that my client, that conditions or combinations of conditions could be maintained on my client to keep the community safe while he was out on pretrial release, there's no reason that it would have allowed him to leave the state. Also, the standard review on sentencing, and by the way, I know courts of review have spoken about all things to be considered and factors. This court is a lot, Supreme Court, but it ultimately boils down to trial court sentencing abuse of discretion. Isn't that it? Yeah, 100%, and I think it absolutely was in this instance, Judge. Well, and we're talking about two different aspects of sentencing here. The first is the basic sentence, for lack of a better way to put it, and then the second is the court, in its discretion, chose to impose an extended term sentence, or consecutive sentence, I misspoke. So my question is, with regard to the imposition of consecutive sentence, isn't the standard the same, namely, is an abuse of discretion, or is there somehow an issue about an abuse of discretion that's different when you're evaluating a trial court's imposition of a consecutive sentence? I think I understand Your Honor's question, and my understanding is that it is an abuse of discretion whenever we're dealing with this. I did see some case law that it could be de novo if there are no facts in dispute. So I think potentially Your Honors could review it de novo, because the facts are what they are, and they were outlined at the sentencing hearing. Well, that's a little bit of a surprise. Any trial court, has any court of review ever said that a trial court's assessment of a case and sentencing, where everything is presented, we're going to review it de novo? I've never heard of that. No, Judge, and I didn't find one on that issue, which is why I presented it as abuse of discretion. Well, my point is that they're both abuse of discretion. We have to conclude that the court abuses discretion in each instance. It's the same standard, isn't it? Which is essentially no reasonable person in the position of the trial judge could have imposed this sentence. Yes, yes, and I absolutely think it was an abuse of discretion, Judge. When you look at this particular defendant and these particular facts, he was 19 and 20 when this happened. There is nothing about this defendant and these facts that make him particularly dangerous. And in fact, the only thing that could have possibly made him dangerous is if he could do this again, Judge. And as we lay out, and as is clear from the trial court's discussion, he's never going to be in this position again. As the trial court wanted to remind him, he is a registered sex offender. Nobody wants him around their children ever again. He's never going to have a job like this again. And it was the fact of this job that put him in this position to do this thing. There was no other thing about him. It was this job that put him in the position as a very young man, as a very young man. I want to call him a child. I know he's 19 and 20 years old, but as a very young man to do these foolish things, Judge. There's nothing about him that says he's ever going to be in this position again. So to say that he could ever be dangerous in this way again, it does not hold water,  And what about the statute refers to the nature and circumstances of the offenses. Is there anything that the judge could have reasonably concluded about the nature and circumstances of the offenses that the defendant posed a danger? Aaron, I was actually thinking about that as I was prepping for this morning and no, because everything that this judge is looking at is everything that he's charged with, right? There's nothing outside of what my client has been charged with. He's considering all those facts, right? The fact of his conviction, the fact of these facts. I don't think there's anything outside of that. I don't think there is anything outside of it either. What I'm saying is, is there anything inside of it that would support the conclusion that he's would present a danger if he was released in six years as opposed to 12? No, I don't judge. And I think Dr. Karish's testimony speaks volumes to that. And that is one of our issues with this is that the trial judge gave exactly no weight to the opinion of Dr. Karish's expert opinion that jail would be bad for him. In fact, we can rehabilitate this boy if he is outside. In a couple of months, we can get this boy back on the right track if he is outside. The judge didn't even talk about that. The only thing- I have two questions. Go ahead. I'm sorry, go ahead. I was going to say that it's certainly the trial judge's call what weight he puts on the testimony of any given witness. And in regard to the sentences themselves, whether it's probation or imprisonment, your argument is relevant. So, you know, if he doesn't go to prison, but we know in the context of the consecutive sentences that we're talking about, should a six-year or a 12-year sentence in totality be imposed? I'm not sure your argument is relevant to that question. Certainly, Judge. And I think that is one of the things about this is that the arguments on both of them are so close, right? They're so closely aligned. So- Doherty's point was my first question. Namely, the trial court is not required to give any particular weight to any witness who's testified at the sentencing hearing, is it? No, Judge. I think that the trial court decides who it listens to and who it doesn't.  By the way, the second point I wanted to raise is this. I think you've asserted throughout your brief that, and you just, I think, we're making the same point now, that essentially the trial court impractically considered elements which are inherent in the offense. Is that what you're asserting to us? Judge, I do think that the trial court did that, but I don't think that it is, I don't think it is the biggest problem with the trial court's decision. Let me point out some things the trial court said, and I want to get your response to it. And by the way, in the context of a matter inherent in the offense, this court has written about it, that the primary focus in that is what's the minimum amount necessary to commit the crime? To give an example, not having anything to do with this case, but I think it's a good example, is someone's charged with aggravated battery for, without any justification, punching a person in the face and breaking his cheek and knocking him down. That's enough to commit the crime. But once that victim has been knocked down, if the perpetrator then proceeds to kick him three times, that's an aggravating factor not inherent in the offense, isn't it? I do understand that, Your Honor, yes. Okay. So here is what the trial court had to say, I believe, about the defendant's offenses, and this is what he said. The defendant had a very striking pattern of abuse of both victims that included encouraging both of the girls to send him child pornography videos that he prompted them to make with offers of money or threats to kill himself. The defendant also encouraged the girls to do more extreme sexual acts. Two questions. One, are those statements correct? I believe that that was in the record. I believe that there were both of those that were sent, yes. Aren't those acts and factors which are completely beyond those that are inherent in the offense? I mean, to commit the offense of criminal sexual assault is pretty bad, but the notion of encouraging victims to send them child pornography photos of themselves, this is nothing. That is a separate offense, Judge, that would have been a separate offense had he played it. Well, but it's something, a factor in aggravation the court can consider in sentencing, can it not? I certainly, the court can consider that. Then with regard to how the court viewed this, the court said this. Characterize the defendant's abuse as extremely serious. The court cited defendant's long period of grooming the girls as encouragement of the girls to make videos as traumatizing them forever, was the court's term. And the trial court considered an aggravation that defendant committed crimes in a church, and he thought that relied on the need for others to deter, sentenced others. In fact, being a youth minister is an aggravating factor, isn't it? I think that's fair, Judge. Giving him access to these girls who otherwise trusted him and relied upon him? I think that's fair, Judge. That's what he pled guilty to. I mean, that's why he pled guilty to what he pled guilty to. Yeah, this was all before the trial court at sentencing. And I suppose the question is, given these factors, which the court has pointed out, why doesn't that make him a more dangerous person than someone who just, just in quotes, committed the offense of criminal sexual assault? Easily, Judge. It's his age. He was 19 and 20 when he did this. 19 and 20. He was not that much older than these girls. And I know, he knows, he shouldn't have done it, right? It was wrong. The statute says it's wrong. He shouldn't have done it. But he was, he was a kid. And he was a kid who had been homeschooled his whole life, right, Judge? And he was a kid who worked for his dad. He did not have that much life experience. If he were 25, your argument wouldn't be made, is that correct? I'm sorry, say that one more time. I didn't hear. If he had been 25 instead of 19 or 20, you wouldn't be here making this argument? I think it gets harder as he gets older, Judge. I don't know where that argument stops. But I do think it gets harder as he gets older. 19 and 20, Judge. I mean, he is a baby. He is a kid. Counsel, your point is well taken. He's young and it's 19 or 20 and all that. But the issue before us is, is the trial court's view of this differently than yours, something we can deem to be unreasonable? 100%, Judge. And 100%, Judge. And I think that it is clear from the trial court's own words. The trial court in its initial order says nothing about or relatively nothing about the age or any of the mitigating factors, right? It gives lip service. Oh, yes. Pause right there for a moment. Excuse me, because this is a point I meant to get to. Because you make this argument in your brief. What is the trial court required to say about the existence of any mitigating factors other than a general statement that I read them and considered them? Judge, I don't know if it's required to say any more, but what I can say is that it is clear from the rest of what the trial court did say that it didn't give much, if any, weight to them. And I think that is where the trial court is wrong, because that is incredibly important in this case, Judge. And it is an abuse of discretion. It is an abuse of discretion not to consider the considered testimony of Dr. Kirsch, who has worked for DOC, who has evaluated individuals in big money, who knows this issue, who knows these types of cases and clients. This is what he does. And his opinion is, man, it would be wrong to send this kid to prison. I can help this kid if he's out. And if he goes in, he's going to face other things that make it worse. And that is part of it, Judge, is that the court is supposed to consider that rehabilitative factor, and it did not. There's nothing— So your argument is not only that the consecutive sentences are an error, but any prison sentence is an error and should be reversed? I think in many jurisdictions, Judge, this case would have resulted in probation. In this particular jurisdiction, they gave him almost the maximum amount of time that they did. And yes, I do think it was an error. I think it was an error based on this young man's age, the age that he was at the time that it happened, and the fact that he can be rehabilitated. And I don't want to skip past the fact either, Your Honor, that it's not just the prison sentence, Judge. Giving him probation does not sound like slap on the wrist and now we go forward. And the trial court acknowledged that in his own decision when he said, you're going to be a registered sex offender. And that is significant. For the rest of my client's life, starting from 21 years old, he goes forward with a scarlet letter on him. It's going to affect his employment. It's going to affect his housing. It's going to affect his ability to have relationships. It's going to affect his future ability to be able to go to schools and parks with his own children if he is ever able to find somebody who would be willing to have them with him, given the mark he has on him and has had on him since he was 21 years old for things he did when he was 19 and 20. It does not deprecate the seriousness of this offense. So can the court consider the victim impact statement of victims and did the court inappropriately consider any of those statements in this case? I mean, I think it was appropriate for the court to consider them. I think it was appropriate for the court to consider them. I think that it is clear from the court. Aren't they pretty serious? Isn't this an indication that these girls have been traumatized by all this? It was only one statement, Judge. Yes, obviously, she was upset by this. Obviously, she was upset. The court termed it traumatized. Wouldn't that be the more correct designation? If we want to call it traumatized. Judge, I don't think it's wrong for the court to consider that. What I'm saying is that the judge wholly failed to balance anything else with that. Yes, the victim is traumatized. Yes, that's why we're here, right? That's why my client pled guilty. That's why he accepted responsibility. That's why he said, I won't make everybody sit through trial. Yes, Judge. But the problem is that the judge considered nothing else. He considered nothing else. And I did want to point out, Your Honors, that I think it is relevant that a large part of what he said had to do with his concerns and his anger at the church itself for allowing this to happen. And if you look at his comments, his comments are, we're here because the church didn't have things in place to stop this. And he may be 100% right about that, but that does not make my client dangerous. That is the church. That's a problem with the church. It doesn't make my client individually a dangerous person. That means he thinks there are things that the church could have done. And he took a great deal of time to talk about that and a great deal of time to remind my client that he should never be in any kind of ministry ever, right? Nobody wants you around doing this ever. Judge, he, the court, just wholly failed to consider that a very important part of sentencing. That is, we're supposed to consider, and a part of this is rehabilitating the defendant. Ms. Bigg, your time is up. You will have time in rebuttal. Thank you. All right. Thank you, Ms. Brooks. You may proceed with your argument. Thank you, your honors. May it please the court and counsel. In the case, the statute authorizes consecutive sentencing where it is necessary to protect the public from further criminal conduct by the defendant. And here, the trial court's judgment was that consecutive sentences were, in fact, required to protect the public. And that decision was not an abuse of discretion such that it would be so unreasonable to the degree that no reasonable person would agree with it. That would be the standard in order for this court to reverse it. The defendant emphasizes his age. Actually, the Rivera case, the state cites a defendant. In that case, a burglary defendant was 17. And despite the argument in Rivera was this age, the fact, though, that the Rivera defendant committed six burglaries in a short period of time, that made it such that the judge in that case deemed it necessary to impose consecutive sentences on two of the crimes in order to protect the public. And that was deemed to be a serious crime. And in this case, the defendant was a little bit older than that. But I think in this case, I think the aggravated criminal sexual abuses that he committed were actually more serious than the burglaries of the Rivera here with two girls. You know, sometimes we can get a little bogged down in comparing one sentence in one case to another. So I'm not sure I want to go there. But it's an abuse of discretion. And on the sentencing decision, there's a whole wide range of things that the court is there to consider. But when we're talking about abuse of discretion on the consecutive sentence, we're talking about a narrower proposition, right? That the defendant would present a danger to the public if he were released after six years as opposed to 12. That's what we're looking at when it comes to the consecutive sentences, correct? Yes. And so all of the discretion on the front end of the sentence is to a broader range of considerations. So it is probably more difficult for somebody to assail discretion in that context. But here it is a more limited proposition. What is there in the record that tells us that would support the conclusion that this defendant presents a danger to the public such that consecutive sentences are required? Well, it's exactly what the trial court said in its reasoning when the trial court explained why it deemed the defendant to be a danger to the community. And here there is two different girls, three different acts each, including digital penetration. Can I stop you there? That's why he has two sentences, right? I mean, if he didn't have two sentences, we wouldn't be talking about consecutive sentencing. So it has to be more than there being two offenses, right? But two different victims, but also three separate acts for each victim on top of an extreme and protracted grooming that the judge was, I think, specifically struck by the fact that there was the same pattern of grooming as to each victim. So that sort of the similarities in the grooming made a kind of a very important point there. It went so far as the fact that the defendant, I think it's Justice Steigman, as quoted the trial court's explanation about this, went so far as to threaten to kill himself or offer money in order for them to make child pornography videos to send to him. So this is actually a pretty extreme case. It's not just a simple touching case where two different girls were touched briefly. And it's sort of like a bare minimum sort of situation where there's two different offenses. The trial court, I think, was very struck by how extreme this case was. And on top of the trauma inflicted by both victims. So if you have a young defendant- Can I inquire you about, and I'm sorry to interrupt. So make sure you remember the point you're going to make. The trauma suffered by the victims doesn't necessarily speak to the future risk posed by the defendant. Is that fair? I mean, I understand it absolutely belongs in consideration of what the sentence on the offense should be. But in terms of consecutive sentences, the trauma sustained by the victims doesn't really address the danger issue, does it? Well, it does in a sense that if the defendant does this again, the trauma inflicted by these victims could be inflicted on other people in the future. And that makes the danger more serious. But the if is the question. If he does it, we're trying to assess if, not the consequence of the if. I guess I understand your point to be that the fact that these girls were traumatized doesn't make it more likely, does not make it more likely that he will offend again. The state's point is that if he does offend again, that that makes the danger to the community of him offending again, much more serious than, say, the burglaries in Rivera, where you don't have the same trauma. And the judge's comments concerning what the churches do or don't do, what this church did or didn't do, none of that has anything to do with either the sentence or the consecutive nature of the sentence. Do you agree with that? That's not something that should come into the court's consideration. And I do not believe that, right, I do not believe that that actually entered into the actual determination of the sentence. I think it was more like the court remarking on this particular circumstances of the case as being the fact that sort of like the church's lack of procedures, whatever, to protect the people who attended it sort of failed the defendant here. And since it could have stopped him from offending if they had better procedures in place. I'm not sure that that punishes the defendant for the church's failings. I'm not sure whether it does or not, but I mean, you agree it's not relevant to the defendant's punishment or the consecutive nature of the sentence. That's true. Counselor, I have a question for you that kind of gets to the heart of, I think, what's troubling this panel, and it's this. Before we were on this wonderful court, we were each trial judges, and we each had occasion to deal with sentencing and maybe often to deal with sentencing. And on the one hand, we understood personally the exercise of discretion, but on the other, here we are dealing with a case where let's assume for the moment that the sentence imposed in this case strikes us as one that had we been back, as I like to put it, in honest work as trial judges, that we wouldn't have imposed. Maybe even to the extent that as we look upon the situation, we think it's wrong. We think this sentence was too much. We wouldn't have imposed it, and we think the trial court was incorrect for having done so. How do we weigh all of that? How are we supposed to assess that sense, assuming for the moment members of this panel have that, with the standard that we have to look for an abuse of discretion before we can reverse or change or diminish a sentence which the court imposed in this case? What thoughts or advice do you have as we weigh that tricky question? Thank you, Your Honor, for the question. Actually, the nature of abuse of discretion review is that it is not whether the appellate would have agreed with it or would have imposed it had they been in the trial court's position. It is simply a matter. It's very limited. It's whether any reasonable person, whether it's so unreasonable to the degree that no reasonable person would agree with it. So that's why the individual views of a particular justice on whether they would have imposed the same sentence is not relevant to the inquiry. Let me follow up. Ms. Vig, as you've heard, has just made a very strong argument. And in her brief, she makes a strong argument as well that this sentence is wrong and excessive and unnecessary and should have been imposed. If we, on the facts of this case, were to reject that, are we essentially saying that for all practical purposes, whenever a trial court imposes a sentence, or in this case, a consecutive sentence, that it's simply not unreviewable? We're not going to be second-guessing it because we can never conclude that the trial court was unreasonable in the sentence imposed? It's not the case that the sentences are unreviewable. I've, in fact, lost sentencing arguments from this court in the past, even excessive sentence arguments. It does happen. But I think that it is a very highly deferential standard review. And this is why, I guess, that sentencing decisions are not frequently reversed, is because this sort of second-guessing is not the appropriate role of the court. It is simply to determine whether the sentence was an abuse of discretion. That means that it's so unreasonable that no reasonable person would agree with it. So that only really catches the more extreme situations where a sentence is so unreasonable that it needs to be reversed. Whereas here, if this— Let me follow up again. Is your position that the sentence in this case is not so unreasonable that it needs to be reversed and diminished, either the sentence or the consecutive sentence nature? You're an experienced advocate before this court, and you've done a wonderful job for a long time. So let me ask you to put on Ms. Vig's hat if you were counsel for the defense. What additional factors in your experience and imagination might there be present in this case that you would think, gee, that's enough to tilt the decision of the court to conclude that this is an abuse of discretion? Can you think of what that might be? Well, if this case was not nearly so extreme, I mean, that's why you'd have to take away the child pornography element to it, the threats to the victim to kill himself. You have to take away perhaps the trauma part of it for the length of the sentences. That doesn't— Like Justice Doherty, I think, was asking about whether it goes to the consecutive portion, but at least to the length of the sentences. So yeah, if there was no trauma, if there wasn't multiple acts with different girls or extreme similarities sort of like amongst extracted, the protracted grooming part of it, the fact if it didn't happen in a church. I mean, I have to take away a lot of this case, I think, to get into the territory of this sentence would have to be unreasonable. But I think this is such an extreme case that to find this particular extreme case unreasonable to the degree that no reasonable person would agree with it, that would not be an appropriate exercise of the power review of this court. I think because the standard review is so highly deferential that this sort of case is not the type of case that could be reversed just because it just was so extreme in many of its respects. Ms. Brooks, I'd like to ask a question, and it relates to the consecutive sentencing portion of this, not the excessive sentence claim that's being made. But it goes with what my colleagues have previously been asking about, what seems to be, what is additional requirements necessary for the court to find in order to impose consecutive sentencing. So the judge here had to consider the history and character of the defendant and then make a determination that consecutive sentencing was necessary for the protection of the public. I'm correct here that this defendant had no prior criminal history, correct? Yes. Okay. There was nothing indicative in his past putting aside criminal history that would point towards any kind of sexual deviancy, is that correct? I'm not aware of anything that would go to that. All right. Then going to the protection of the public aspect of it, in terms of this particular offense, it's been described that this all happened within the structure of the church environment, and that the grooming took place through church activities, and that essentially this was the vehicle for the offense to occur. That being the defendant's position within the church as a youth minister. Excuse me, is that actually the title that he held, youth minister? I'm not sure exactly his exact title, but it did put him into contact with children who attended the church. Okay. Whatever his title was there, this offense occurred all through the lens of his role at the church. Is there anything to indicate that in the future he would have such a role again? Well, no, I don't think that's required though in this situation, in the sense that I think even though this happened in the context... You're jumping ahead to another question I haven't asked. Sorry, I'll let you ask it. Yeah, okay. Well, I may not, because I want to hone in the point that I wanted to make, and the question that I wanted to ask of you. If he has no prior criminal history, and there is no history of sexual deviancy, he's a young man, 19, 20 years old at the time of the offenses. And if the facts indicate that this was essentially, I'm going to, for lack of a better term, call it a crime of opportunity, what then would support... And let me add one other feature, and that being the assessment by Dr. Karich as to his level of risk for re-offending. What is there in the trial court's findings, because the statute requires that the trial court establish its findings, that would suggest that consecutive sentencing is necessary for the protection of the public? Well, the trial court's finding was that the same pattern of very consistent and protracted grooming with two different victims meant the public needed protection. That was what the trial court cited, and that was the reasoning of the trial court, and that's what the state relies on. All of that related to this offense, though, not prior offenses, not any indication that he was planning future offenses. Is that right? We have no indication, other than the fact that there was this similarity between the protracted grooming of two different victims, and that's the risk that makes it, from the trial court's perspective, that he could offend again in the future. And I guess I want to respond to the defense argument, is that because he's going to be a registered sex offender, he's not going to be allowed to be working in a church context. The fact that this actually happened in a church does not mean that he could somehow not encounter other underage people to victimize in another context. I guess that's why this is not, it's sort of like impossibility. I want to follow up, excuse me for interrupting, before you run out of time. I want to follow up with one additional question, because it just seems like, based on what you're saying, the justification for consecutive sentencing here by the judge was, he did this, it was egregious in terms of his conduct, he did it once, he could do it again. Why wouldn't that rationale be applicable in any case involving criminal conduct? Well, your question says he did it once, he actually did it twice, in the sense that he, well, before he was caught though, but I mean, he did it with two different victims with a very similar pattern. So that's, if there wasn't the two victims in the same pattern, I do not believe that, for example, if the separate touching of one girl had been charged separately, that he would have gotten consecutive sentences. I think he only got consecutive sentences in the trial court's view, because there were two different victims with the very same pattern of protracted grooming, and that's what the trial court determined to make some dangerous in the future. Can I just ask you though, why would somebody who engages in a course of grooming and then commits the offense against two victims be more dangerous, less dangerous than a person who walked up to a stranger and did the same offense? You seem to be just putting it out there as a trial court did that, well, there was grooming in this case, so that makes it more dangerous. I'm not sure I understand why we would draw that conclusion. What makes him more likely to re-offend because the offense was preceded by grooming as opposed to not? Well, this isn't just impulse. This is what the trial court's viewed as premeditated extreme grooming. That's why, and from two different victims with the same pattern. I mean, this is the type of thing that a trial court could very reasonably decide makes him dangerous in the future, when it's so extreme and protracted and premeditated that that makes them dangerous in the future. Do you see that? I mean, it sounds like we're just describing what happened here, not valuing that it tells us something more about the risk in the future. I personally would think somebody who goes around accosting strangers and acts on impulse might be a more problematic risk to re-offend. What's going on with that person? These are all bad things that we're talking about. I'm just having a hard time understanding why it's a factor that leads us to believe that this defendant is more dangerous because of it. Again, the trial court's view is that because it was the same pattern in two different victims, that makes him danger to the community. The public needs protection. That's a reasonable judgment for the trial court to make. The defendant has to show an abuse of discretion. It's a heavy burden to make. It's a very highly deferential standard of review. I understand they have things in their favor, like Dr. Kerich's report, the lack of prior convictions. Highly deferential standard of review on a very specific question. I mean, but if this is a close case, if this is a close question, the defendant is going to lose because this court doesn't reverse on a close case with a very highly deferential standard of review. There has to be deference given to the trial court's judgment, and the judge is trying to protect their community from somebody they view as a dangerous sexual predator. That's the type of thing that I think this court needs to defer to. If this court has more questions, my time's up. I'll just ask this court to affirm. Thank you, your honors. I'll ask the panel, are there any additional questions of Ms. Brooks? No. Thank you, your honors. Thank you. Ms. Vick, rebuttal argument? Thank you, your honor. To answer one of your questions, he was not a youth minister. He was a youth leader. He was not a minister. He was just a youth leader. His dad was the minister of this church, and his dad had sort of put him in charge of the youth activities. So he was not a minister. Judge, I think that the thing we have to be mindful of is that in order to find him dangerous, you have to think he's going to be in a position like this to do it again, because all of the conduct relates to this position of trust that he had. And there is no evidence. There is no reason to think he would ever be given this position again. And that's one of the issues. Now that he has this mark, he's not going to be there again. And he was put in this position, unfortunately, by his father, to be this leader of the church, and then he made decisions that he should not have made. Well, Ms. Vig, just in terms of the grooming aspect of it, Ms. Brooks did explain or did recite the trial court's findings in regards to what the trial court found to be a disturbing pattern of grooming. And it would tend to show a, well, potentially, at least for the trial court it did, a certain level of dangerousness beyond just a spontaneous act that would have been criminal in nature, would have led to a charge of a similar nature, that this planning and over time grooming is very indicative of a pattern that, you know, if not subjecting defendant to consecutive sentencing would pose a risk to the public. So the grooming itself, why isn't that supportive of the trial court's finding? I keep thinking about that, Judge, and I've thought about that a lot with this case. And I guess, I think, A, I think I disagree with counsel's assessment that this is extreme. This is sort of how these cases work. This case is not any different from any other case like this. I think that the, to call this case extreme, I think is a wrong way to characterize it, because I don't think it's extreme. This is how these cases work. And the behavior was bad, right? That's why it's a felony. That's why he took a felony charge, a felony conviction. But to say that this is extreme, as in it is something beyond what usually happens in these cases, Judges, I just don't see that. This is, this is how these cases work. And you're, I agree with your honors. We're talking about bad things, but this is just sort of how these bad things happen. So to say it's extreme, I just- Mr. McCauley, I'd like to follow up on, you've asserted several times that this defendant will never again be in a position to commit an offense like this. I'm wondering, going back to what Ms. Brooks said about the grooming, and Justice Howard talked about, oh, it would be real bad if it were just a one-on-one situation, a stranger and all that. But in some sense, this shows careful planning. This shows a scheme. This shows someone who clearly understood what he was doing was wrong, yet figured out a way to do it and did it for a long time. That's what this grooming shows. And I'm just wondering why couldn't the trial court or this court view this defendant as someone who, when he gets out of prison, will be capable of engaging in other plans to be in other activities where you say, well, he's going to be a convicted sex offender. To what extent does that matter? For instance, do people check out for a kid's softball league for someone who's a volunteer in the community? I don't know that it does. And you've asserted several times it couldn't happen again with him. And I want you to address why couldn't. I think that part of this analysis, Judge, is his age. These mistakes that he made were youthful mistakes. And if you look at Dr. Karrasch's report and you hear his testimony, the reason I think that we can say that he is not likely to do this again is because these were dumb things that a kid did when he was 19 and 20 years old. And even in Dr. Karrasch's opinion and report, as he gets older, that's not a problem. Moreover, with the correct treatment, it's not a problem. Dr. Karrasch was very clear. Treatment will be effective for this kid. Treatment will work. And that's why we can say he's not dangerous. Okay. Justice Steigman, any additional questions? I'm sorry. I can see Justice talking, but I can't hear him. Oh, Justice Steigman, yes. Your microphone doesn't appear to be working. It doesn't show. Okay, it's working. Well, I just want to add this, that this is an involved sort of tricky case. And this panel has asked both counsel a lot of questions. And I want to commend you both. You did a very nice job in responding directly and helpfully to the questions we asked. So thank you for that. Thank you, Your Honors. Your Honors. All right. Thank you, counsel, both. The case will be taken under advisement and the court will issue a written decision.